You may be seated. Council before you come up, the court announces that the government's motion to supplement the record is granted. You may proceed, Mr. Wilson. Good morning, Your Honors. May it please the court. My name is Nathan Wilson. I represent Mr. Garrett in this case. Mr. Garrett and his co-defendant, Mr. Cole Evans, were arrested at the same traffic stop and indicted on overlapping charges. Mr. Garrett pled guilty and was sentenced to 20 years in federal prison. After he pled, the government dropped all charges against his co-defendant as a result of its misconduct. Before the court, Mr. Garrett presents two issues for review. First, did the government's misconduct render his guilty plea involuntary? Second, did the district court err by failing to show any consideration of Mr. Garrett's arguments for a reduced sentence? Starting with my first point, this court held in United States v. Fisher that a plea is involuntary if there is A, government misconduct, and B, that misconduct alters the defendant's decision to plead guilty. Mr. Garrett can show both steps under Fisher. On the first step, there was misconduct. The government and its warrant to search the home that Mr. Garrett resided in Counsel, before you go forward, just to clarify Fisher's standards, is it misconduct or is it misconduct that goes to the integrity of the proceedings? Just to get our bearings right on what the standards are, isn't there a little bit more than misconduct? Yes, your honor, it is misconduct that goes to the integrity of the proceeding. And here, that standard is met. First, in its warrant to search Mr. Garrett's home, the government failed to disclose that both of its confidential informants had misidentified Mr. Garrett as a Mr. McDuffie. It failed to clearly clarify that there were two confidential sources. It failed to disclose that the second confidential source was paid $200 in order to testify. And it failed to disclose that that second confidential source did not have a history with law enforcement. Not only that, but in other parts of the proceeding, such as in the pen register trap trace for Mr. Cole Evans, the government failed to disclose that its confidential source, the second confidential source, had originally identified Mr. Cole Evans as a Mr. Riley Smith. And it again failed to disclose that there were two confidential sources. The government continued to claim there was a single confidential source throughout the briefing below the suppression briefs before the district court. That misconduct materially altered Mr. Garrett's decision to plead guilty. Mr. Garrett did not learn about the misconduct until after he pled. If he had known about the misconduct, as the attorney in Fisher explained, he would have attempted to negotiate a better deal with the government. He at the very least would not have pled before the government decided his motion to suppress. And as in Fisher, if the government, if he had not prevailed on the motion to suppress, which Fisher says the defendant does not have to prove that he would have prevailed on the motion to suppress. But if Mr. Garrett also had not prevailed on the motion to suppress, he would have been in a much stronger position to go to trial. After all, the government's two confidential sources had never identified Mr. Garrett as the individual who participated in the alleged buys from in the month of February. They only identified a Mr. McDuffie. And. So, so, council, let's, I will kind of move over the issue of whether the. That the misconduct is described rises to the integrity of the prosecution as a whole in the same. In the same way we talk about with Fisher, I mean, don't, don't that may or I'm just not. I want to move to the materiality issue for a second. You said that Mr. Garrett did not appreciate or know of the two confidential informants until after his plea. He, he did have the documents that revealed it for six weeks before his plea, though, didn't he? Yes, your honor, those documents were released on February 2nd and he pled on March 15th, but there are a couple issues there. It wasn't perhaps your standard Brady v. Maryland situation where a key piece of document is turned over right before trial. This was a dump of 775 pages of evidence with the relevant misconduct scrawled into the margins of one or two of those pages. Well, they, I hear you that on that, yeah, I guess it was, you know, the co-defendant figured it out and not only figured it out, but submitted a letter that Mr. Garrett would have had access to by virtue of the filing before the plea as well, correct? The letter was filed the day before the plea. Okay, all right. If we look to Mr. Cole-Evans, the co-defendant's attorney, she was appointed on March 16th. She was unable to prepare a motion for reconsideration until August 3rd, almost six months. It took her that long to sort through the evidence and she pulled out additional misrepresentations that the co-defendant overlooked. Does the, does the, does the, does the information, at least in terms of the, when you look at the PRTT applications, um, does it matter if the information, um, that you're complaining about was not in the Garrett application? No, Your Honor, for two reasons. First of all, those misrepresentations also go to the warrant to search Mr. Garrett's home. And second, because it undermines the credibility of law enforcement, which this court recognized in Fisher, even if Mr. Fisher had lost his motion to suppress, it's a completely different decision to go to trial when the law enforcement officers under law, you know, participating in the investigation have been making misrepresentations throughout the investigation. And when we go to whether the misconduct is inherent, I can't, sorry, recall the exact language in Fisher, but this is a case similar to Fisher, where what was misconduct in Fisher? He misrepresented which confidential source provided him the information, and he did not disclose that he was paying the confidential source. So the facts here are similar to Fisher, and if Fisher went to the, um, you know, the integrity of the prosecution as a whole, it does. I mean, I'm sorry to cut you off, but, but, I mean, Fisher, the, you know, at least as our opinion is, you know, that the representation was that there was an informant who had nothing to do with the case whatsoever. That's correct. And, and, you know, I mean, we have an alleged misrepresentation, um, you know, related to confidential informant, so I guess there's some similarities there, but, you know, one could argue saying someone who had no involvement whatsoever goes to the integrity of the prosecution more than some question about whether it was explicit that there were two confidential informants. It seems to me the most explicit, um, reference is probably in the briefing. You could debate some of the other issues as whether they're, I think, I mean, whether, or one might argue as whether they were as, you know, as whether they were inaccurate. You know, in the, in the briefing, it's, yeah, I think your argument is, you know, more well taken or at least more clear. Thank you, Your Honor. I would draw a comparison between the confidential informant who had nothing to do with the case in Fisher and the two confidential informants here who both said, I participated in a drug transaction with a Mr. McDuffie, and then the government obtains a warrant for Mr. McDuffie and then comes back after the fact and says, well, actually, it was Mr. Deshaun Garrett. And we know that when the government submitted the homework on pages 89 to 94 of the joint appendix, that they knew the individual who was pulled over in the car on March 9th was not Mr. McDuffie. According to the latently disclosed evidence on page 232 of the joint appendix, there is a note from DOJ which says, quote, during the traffic stop, we learned that the individual we thought was McDuffie was Mr. Garrett. That means none of its confidential informants, both of whom allegedly saw Mr. Garrett in person, identified that, hey, this is Mr. Garrett, not Mr. McDuffie. And yet when the government applied for the home warrant, it told the court, we have Mr. McDuffie in custody right now. We pulled him over on the March 9th. We identified this is actually Mr. Garrett. And the government knew the law enforcement officer submitting that warrant knew. We know that because if we look to page 85 of the joint appendix, there's a picture of Mr. McDuffie, and he is named as an individual to be searched at the house. You won't see a picture of Mr. Cole Evans because the government knew that Mr. Cole Evans was involved in the March 9th traffic stop. So the only reason for them to include a picture of Mr. McDuffie in their warrant to search the home is they knew they did not have Mr. McDuffie in custody. They knew they had Mr. Garrett in custody, and they were hoping to find Mr. McDuffie at the house. And yet they still represented to the court that it was Mr. McDuffie involved in all the transactions and that he'd been arrested on March 9th at the traffic stop, not at his house. So that goes to the integrity of the proceeding as a whole. And again, there's a couple other factors besides just the fact that the information was disclosed. It was disclosed after all briefing on the suppression hearing was complete. Not only that, but the government had continued to misrepresent what the evidence in its exclusive possession showed by claiming there was one confidential source and not providing any of the credibility issues. And the government as well, once that information was released, turned up the pressure. It was, quote, trying to move forward with the case as it admits in its brief on pages 35 and 36. It was not a foregone conclusion that the government was going to leave the plea deal on the table. And in fact, it added another charge to Garrett's indictment right after the information was disclosed. Meanwhile, Mr. Garrett, he knows, as this court recognized in Fisher, a government's defendant's assessment of whether to plead guilty is not based on his knowledge of his own factual innocence. It's based on his assessment of the government's case against him. And without this information, Mr. Garrett was not able to form the assessment that he really should have maintained his motion to suppress. And that if the motion to suppress was denied, as the defendant in Fisher would have, he would have seriously considered going to trial. So is the argument you're making now with respect to the withdrawal of the plea based on the misrepresentation, or is that what you've just been talking about, the Brady versus Maryland argument? That was the withdrawal of the plea versus representation. Mr. Garrett also does contend, though, that the late disclosure alone is sufficient under Brady v. Maryland. Moving to the sentencing issue, unless your honors have any more questions about the misconduct with the plea. I do have a question. You agree that, because I know he's looking at Cole Evans, you agree that the standard on that motion to reconsider was less than what we have here before us today, is that correct? Yes, your honor. Mr. Garrett also provides more evidence given both witnesses' misidentification and the misrepresentations in the home warrant that was brought in Nicole Evans' motion for reconsideration. On the sentencing issue, the Supreme Court held in Rita v. United States that the district court must, quote, set forth enough to satisfy an appellate court that he has considered the party's arguments. That did not happen here. The district court simply listed the counts that Mr. Garrett had pled to and then announced the length of the sentence. It was going to assign to each count and then said that they were going to run concurrently. There is nothing in that statement to give Mr. Garrett an indication or this court an indication that the district court considered Mr. Garrett's arguments for a reduced sentence. In fact, this is, and it was also prejudicial. If this court looks to Jordan, the government claims that this was harmless error, but in Jordan, the government requested the district court to sentence the defendant within the guideline sentence. The district court sentenced the defendant within a guideline sentence. On review, this court said we can't find that this is harmless error because, of course, the government said, well, you can see the court rejected the government's or rejected defense argument and accepted ours, so it's harmless error. But because there's no indication as this court held in Ross quoted in Jordan, it's left, quote, guessing why the district court selected the sentence it did and did not accept the defendant's argument. And if this court is left, quote, guessing, then that is not harmless error and a remand is required. This is also distinguishable from Roberson. I think Roberson helps the court determine when it can find harmless error because in Roberson, the judge said it would be, quote, too modest to have a lesser sentence. So this court had something to be able to say, well, if we remand, there's not going to be a change in sentence. We don't have anything here of the same level uncertainty. Instead, this court is left guessing, and under Rita, that is not enough. So does your sentencing claim depend on the success of your withdrawal of the plea? Not necessarily, Your Honor. Mr. Garrett would also say that he should be able to bring this claim as to prevent it would be a miscarriage of justice, and thus the appeal waiver would not apply to that. Is there anything, I mean, is it within, you can see this within the scope of the waiver, correct? As identified in, I think the case is, but not necessarily, Your Honor. As this court has held before, an appeal waiver cannot waive a claim that would be a miscarriage of justice to leave in place. Right. I understand. I guess I understand that argument, but you're saying if it qualifies as that, by definition, I guess, is your argument, not within the waiver, but the waiver certainly talked about appellate rights. I see my time has expired, Judge Gregory. You may respond. Thank you, Your Honor. Yes, if it was not a miscarriage of justice, then it would fall within the appeal waiver. I understand. Thank you. Thank you, Your Honor. Thank you, Mr. Wilson. Ms. Fritz. Good morning. May it please the Court. Christine Fritz, on behalf of the United States, asking you to affirm the judgment of the District Court. Ms. Fritz, do you think that the conduct of the government properly represents the United States in the prosecution in this case? I believe we fell short of the standards we set for ourselves, but I don't believe that the defendant has demonstrated on a plain air standard that there was a Brady violation or that his guilty plea was induced by government misconduct. Now, when it comes to Garrett's challenge to his guilty plea, there is something that the burden of demonstrating every prong of the plain air standard of review, and he's not done that here. When it comes to the PRTT that was used to track his own telephone, he has not demonstrated that there were any material misstatements or omissions, much less that those were made intentionally with the intent to deceive or with reckless disregard to the truth. He has not shown that the second confidential source was involved in the case at the time the PRTT for his phone was obtained or that the information provided by the confidential source was used, confidential source number two, was used in any way for the PRTT. He hasn't even demonstrated that the affiants are the same. And since this court has taken judicial notice or has accepted our motion to supplement the record, you'll see that these are different affiants. Detective Ebersole is the affiant who secured the PRTT for Garrett's phone. She is also the affiant who secured the search warrant for Garrett's house and for the actual physical search of the contents of the cellular telephone. Let's talk about the house, the warrant for the house. Would you agree that there was a misidentification and that information was not shared in the warrant? I would agree that throughout the investigation, the confidential sources knew Garrett by his street name. And that was the information that was provided to the agents. And they had done a street name, they had done a search and they found that Gregory McDuffie had been living at that house. And there was some confusion. But again, I don't think there was any deliberate or intentional effort to mislead the judge who issued the warrant. Throughout the investigation, the parties thought Garrett was someone else. Garrett was the individual who was coming and he was the one associated with that Volvo. He was the one who made these deals. He was on camera. He was surveilled going from that house to the deals on two occasions. He was surveilled going from the house to meet with the supplier. And the deals also occurred in parking lots. So the and leave. So I don't think that there was anything intentionally misleading. I think at the point in time when Marissa Ebersole submitted that affidavit, they thought that Garrett was McDuffie. What about the picture for McDuffie and not Cole Evans? Is there an explanation for that? Cole Evans was associated with the residence insofar as he visited the residence a couple times. But the evidence that was developed during the investigation wasn't that this was Cole Evans's home. The evidence that had been developed during the investigation was that they believed somebody by the name of McDuffie, who was later revealed to be Garrett, was living there with his girlfriend and then the girlfriend's brother. So those were the three primary people who were associated with the home. I don't think that Cole Evans was independently connected to the home other than through his association with his cousin Garrett. And with respect to the search warrant of the home, I think it's important to recognize that that search warrant did differentiate between the two confidential sources. Confidential source number one was referred to as a Wilson County Sheriff's Office confidential source. And then when we get to the second, and that was for the first controlled purchase, so the February 3rd buy, that was the Wilson County Sheriff's Office source. And then when we get to the second buy, the February 16th one, that is referred to as a City of Wilson Police Department confidential source. And each time the City of Wilson Police Department confidential source made a buy, which was also the February 24th buy, that is noted. I appreciate it could have been made more clear in Wilson County Sheriff's Office, City of Wilson Police Department. But I think that when you look at the affidavit, there is not any effort to mislead about either the number of confidential sources or which individual did which buy. But if I accept that point, and if you read it closely, I think there's some basis where you can do that. Then you get to the briefing on the motion to suppress. And there it's harder to maintain that position. I agree that we did not do our best job on the briefing for the motion to suppress. I think that had this particular concern been raised to the AUSA who did that we could have fixed that in the district court. Unfortunately, it wasn't noted and it wasn't until the number of confidential sources became an issue. And when that was brought to the attention of the AUSA handling the case at that time, he very quickly recognized that we made mistakes in our briefing on that. And I, I would submit that it, those mistakes were not intended to mislead or anything else. I think it was a lack of careful attention to detail. And what's the, what's the timeframe between when you knew these mistakes were made and when you revealed them with respect to the motion to suppress and the briefs? You said the briefs, you recognize that they were not for forthcoming and you say it's not intentional, but when, when did you, when did you know this in terms of time, how much time transpired from the time you knew that these problems, identifications, uh, confidential sources and the briefing, what's the time period between those two events? There are a number of different events in your question and I'm going to try to unpackage it a little bit in terms of the ident identification. Are you, when you were referring to the identification, are you referring to the attribution of the McDuffie name to Garrett, right? That for example, when did you disclose that fully in terms of before the, in terms of the, uh, the briefing and the suppression motion when, uh, if you, if you ever, you did. What I can say is that the discovery that was provided, um, prior to the briefing and was, um, it did differentiate between the, when did you know you represent the United States here, so you, you have to have all the answers for us. When did you know that this was the problem, these discrepancies in this, as you said, didn't do the best job. I think the question, did you do a proper job? When did you know that this, these things existed before, how much time before the filing of a brief to the United States courts and prosecuting this case? We knew as the investigation developed that the, um, it was a long time, wasn't it? We knew as the investigation developed. Can you answer my question? It was a long time, wasn't it? We made a mistake. No, no. Was it a long time? In terms of recognizing that there were, you know, time is pretty easy, you know, clearly in geology is linear. How much time? I'm not able to quantify. Well, you should be able to, because this case like this is important. You represent in the United States and we're prosecuting and that's our framework said, this is a very important you, you're prosecuting someone. That's what the government takes the most control over the citizens in a free country. Therefore you have to do it right. So you're saying you can't even say when you knew the facts that you didn't disclose. Yeah. The discovery that was provided in the initial pre suppression hearing disclosures, those conveyed that there were two different confidential sources. So that material was available also at that time. But you can't say when you knew what was correct. What I can say is that the AUSA who filed the motion to suppress wasn't careful and made mistakes. And those mistakes came to the light came to light of the AUSA who took over the case with Cole Evans as filings. And at that point, we promptly recognized that the AUSA who handled the briefing had made a mistake saying that you do know that the time for when to do the right thing is before not just the prosecutors for the government, but you represented the executive branch in terms of all the agencies involved for the government. You agree with that? Yes. The clock runs before just an assistant U.S. attorney gets involved or makes mistakes. Right. But you can't tell me when the federal authorities investigating this case knew different. Right. I just make sure I move on, but just make sure that you because I think this is important. When the agents involved in this case knew the facts that were not in the brief, I mean, they were not corrected. I think you said you don't know. I'll move on. Either you know or you don't know. I think you said you didn't know and I'm ready to move on. But if you want to ponder, you can, but I'm ready to move on. What I would like to respond to that is in terms of there being a misidentification or the McDuffie name to Garrett, that was the basis of Garrett's motion to suppress. And that was something he chose to withdraw. And in responding to the motion to suppress, the government did explain how that came to happen during the investigation. That the individuals who are making purchases from him were familiar with him from his street name. And that they did a search of the street name and associated this individual with a house. So that was known to the defendant at the time he made his motion to suppress. Now, in terms of the discovery disclosures that happened on February 2nd, 2022, one of the important aspects of timing in that case is that he had time to review the materials. We realized that we did not satisfy our standards in terms of the discovery that we set for ourselves. But upon receiving those materials, we disclosed them promptly to both Cole Evans and Garrett. And there was time to review those materials. And how much time was it? So the materials were handed over on February 2nd. On February 25th, Garrett asked for and a continuance. And what was the date set for the hearing? The date set for the hearing was February 25th. So they had three weeks? Yes. And it was 700 and some pages? Yes. And you think that's appropriate? Documents that you've had a long time ago? I mean, I'm just, I mean, because, I don't know, when I was practicing law, I always thought, I hope it still is, that when you prosecute, you have a higher standard because yours is just a conviction, yours is to do justice. You think that's appropriate? Had there been any concerns? It's a question to you directly. Do you think that is appropriate in terms of representing the United States as you do here today for the prosecution, the federal case? I am not aware of when the AUSA who handled this case became aware of these other documents. So the record doesn't shed light on that? The record, no, because everything is not in the record. That comes from the responsibility and integrity of the people who investigated and know what actually is the truth. So the question is, we don't know when it was. So you're talking about the USA in terms of when he or she did something. But I'm talking about, do you think that's appropriate? Matter of fact, your good colleague on the other side said the other side got until August to review these documents. Is that right? The Cole Evans... You never answer any question directly. Is that simple? Was it correct that they got until August to look at those documents that you said they could have done in three weeks? It was correct that they had that amount of time. Cole Evans received the documents when he was proceeding pro se. He requested appointment of counsel. Counsel came in and had to familiarize herself with the entirety of the case. So I think it's a difficult comparison to make from when you have an attorney who's coming in fresh to a case and is unfamiliar with what happened. Here, what we have are two capable court appointed attorneys who were responsible for representing Garrett. They received this information on February 2nd. While I agree that we should have become aware of and turn that information earlier under the standards we set for ourselves, if there were a problem, we would hope that defense counsel would raise that issue and say, we've received this discovery. We don't have adequate time to go through it. That was not raised here. Or it could be that you'd say that the government in fairness would say they're both charged with similar things if one got one that you would say also give a continuous to both. I mean, that could be too, but maybe that's out of fairness doesn't exist. Had defendant, had Garrett requested a continuance based on the disclosure of those materials, I have no doubt that we would have agreed that that was appropriate. We would want him to be able to review the discovery and to make an informed decision. And there's nothing in this record as it currently stands that suggests that he was unable to review this information. He had three weeks prior to the suppression hearing. I'll note in his suppression motion, he specifically dropped a footnote saying that he had requested additional discovery related to the tracking of his phone, whether there were any wires, wire intercepts or anything else. So this was an issue that defense counsel had keyed in on. Having received this discovery, I would anticipate that they would look for the things that they have forecasted might be an issue. He asked for a three-week continuance. He received that continuance. On the 14th, he, on, I'm sorry, on the 15th Garrett chose to move to withdraw his motion to suppress and told the court that he was choosing to plead guilty. Six weeks elapsed between the receipt of these materials and when he ultimately entered his guilty plea. And I would suggest that even if six weeks was an inadequate amount of time for him to review this, which I don't think it is, he had more than five months before his sentencing. So if in reviewing these materials, he saw something that was a problem that caused him to plead guilty, he had time to bring that to the court's attention and he had time to make sure that we had a record that was developed for this court to consider, for the district court to consider and for this court to consider. It's difficult to withdraw a guilty plea. You know that. It is difficult to withdraw a guilty plea. After you go through that rule 11 colloquy, it's pretty tough. It's a different standard then. You're not comparing apples to apples. After that point, it's a whole, and that's the problem when you prosecute cases like this, time is meaningful because standards are different. And you're saying, oh, it's okay. It's fine. You know, we did this and we didn't do our best and you can't say when you knew. And then it just doesn't speak well of our nation in terms of how we handle cases in federal courts to me. And I hear your concerns and what I can offer is that if these concerns had been raised in the district court, the AUSA who handled the case would have been able to respond to these concerns, would have been able to offer an explanation, may have had a reason. But we don't have that in the record. What we do have is that the AUSA realized that there were materials that he should have turned over and he turned them over. And the defendant had weeks. There was enough time for Cole Evans who was proceeding pro se to find those documents. And I appreciate that there was a large number of documents, but the record doesn't share what those documents were. Let me ask you this. So under Fisher, are you disputing, well, under Fisher, we're looking at blatant misrepresentation. So you have the misrepresentation to the magistrate or the judge regarding the identification. And also, he's bringing up this argument about the CI number two being paid and that this was his first drug buy. He says under Fisher, this satisfies that totality that is discussed in Fisher. I want to hear what your position is on that. Fisher was, he falls short of meeting the Fisher standard. Fisher talks about a case where gross police misconduct went to the heart of the prosecution case or the government's misrepresentation strikes at the integrity of the prosecution as a whole. That is not what happened here. And when you look at the warrants, the PRTT for Garrett, it did not rely on the second confidential source at all. No, no, I'm referring to the house warrant. The house warrant, okay. That's the one that I'm concerned about because there's misrepresentation to a court to judge that there's misrepresentation that there was a misidentification by the CI. You would agree with that, right? Well, let me ask it this way. They did not discuss with the judge that signed the warrant, when they sought the warrant, that there was a misidentification of Garrett and McDuffie. Yes, and we explained in our motion to, in our response to the defendant's motion to suppress, that was because that misidentification hadn't been recognized yet by the affiant. How much time, what are we talking about here? I can't remember, there's a lot of dates and times. That when was the affidavit submitted? When was the recognition that it was Garrett versus McDuffie? I see my time is up, may I respond? Yes. The affidavit was submitted on March 9th. I believe that the documentation shows that it was submitted within one hour of the traffic stop that being initiated of the car that Cole Evans was driving and Garrett was a passenger in. The same day. It was the same day. It was a very short period of time and the affiant, and I think that the affiant is consistent with the misunderstanding by law enforcement that the person who is Garrett, they believed him to have the name McDuffie because the way the affidavit is written, it says that Deputy Olive, I believe it was Deputy Olive, identified him as McDuffie or knew him to be McDuffie and I would suggest that that was based on the misunderstanding during the development of the investigation as to what this individual's name was. For all these reasons, we ask the court to enforce or to uphold the judgment of the district court and to also dismiss the sentencing claim pursuant to the appellate waiver. Thank you. Thank you, Ms. Fritz. Mr. Wilson, you have time reserved. Thank you, Your Honor. The government claims that this was all just a harmless mistake and they could have sorted out at the district court. Well, they had that opportunity. The district court ordered a Frank's hearing and rather than show up and provide the proof, the government dropped all charges against the co-defendant. Of course, at that time, Mr. Garrett had already pled. A few brief points in rebuttal. First, this case, the court doesn't need Mr. Garrett's pen register trap trace. Our case does not hinge on that. As Judge Benjamin recognized, the home warrant itself is concerning and then as recognized in Fisher, even if the defendant doesn't prevail on the motion to suppress in a situation here where the government's only eyewitnesses have been misidentifying individuals and were paid and had no history with law enforcement, that completely changes the plea calculus. Counsel, the government says that the McDuffie-Garrett issue, they thought the person was McDuffie and it turns out it was Garrett and says they found out the same day that information had not been transmitted. Is it your position that, hey, it's wrong, kind of literally wrong to have McDuffie in there? Are you saying there's something other than a misidentification of the same person?  My friend on the other side represents Deputy Olive's affidavit. Deputy Olive's affidavit, as reprinted on joint pending 71, says he asked the name, quote, at the arrest stop and learned it was Garrett. That's also consistent with the latent disclosed evidence. I believe that's page 232, DOJ report, quote, during the traffic stop. We know the law enforcement officer who submitted the home warrant knew about the traffic stop because she recorded it there. She described in detail the traffic stop. And again, there's no reason to provide a picture for McDuffie as an individual to be searched at the house if McDuffie is currently in police custody. So it sounds, I'm just trying to make sure, it sounds like you're disputing that this is just a mix-up of names. Am I hearing you right there? I mean, are you saying, hey, this isn't just a mix-up of names? There's something more than that? It's not just a mix-up of names because there's a deliberate misrepresentation about who was arrested at minimum, if not also a misrepresentation of the identities and the omission of the $200 paid to the second confidential source and no history with law enforcement. Thank you, Your Honors. Thank you so much. We note Mr. Wilson and you are caught upon it and we appreciate that. And on behalf of the Fourth Circuit, we thank you for your help. We depend on lawyers like yourself to help us in these cases. So thank you much. And also, Ms. Ritz, we recognize your representation in the United States as well. We'll come down to Greek Council and proceed to our next case.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin